UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAMIE ALLEN,

    **Plaintiff,**

v.                                                                    Case No. 2:19-CV-444-SPC-NPM

B&I CONTRACTORS, INC.,

    **Defendant.**

_____/

**JOINT MOTION FOR SETTLEMENT APPROVAL
AND ENTRY OF ORDER OF DISMISSAL ALONG WITH
INCORPORATED MEMORANDUM IN SUPPORT**

Plaintiff, Jamie Allen ("Plaintiff"), and Defendant, B&I Contractors, Inc. ("Defendant"), (collectively referred to as the "Parties"), request that this Court approve the Parties' settlement agreement of Plaintiff's claims for unpaid overtime compensation and wages under the Fair Labor Standards Act ("FLSA"). The Parties submit that the settlement represents mutually satisfactory and reasonable resolution of the disputed wage and hour claims. For that reason, the Parties seek this Court's approval of the settlement agreement and entry of an Order dismissing the case—*with prejudice*—to consummate the agreement between the Parties.

**RELEVANT BACKGROUND OF THE CLAIMS**

By way of background, Defendant hired Plaintiff in or around January 2006 as HVAC-welder fitter or pipefitter welder. Plaintiff was employed in that or similar capacity for almost a decade. In January 2015, Plaintiff was moved to Defendant's Special Projects department, which is a small department with differing schedules, projects, and policies as compared to the rest of Defendant's workforce. In that department, Plaintiff served as a foreman. And as an employee, Plaintiff was provided a vehicle that he could drive to and from worksites, which generally were

within Lee County and near Defendant's office. On occasion, Defendant would assign Plaintiff projects outside Lee County.

On June 27, 2019, Plaintiff filed a complaint against Defendant, alleging that he was underpaid for certain weeks, worked overtime hours, and was thus not fully compensated under federal and state wage and hour laws. [*See* D.E. 1]. According to Plaintiff, Defendant failed to fully compensate him for time spent traveling to and from remote job locations, including failing to pay overtime wages. [*Id.* at p. 6, ¶ 13]. Specifically, Plaintiff claims that Defendant miscalculated wages and overtime by failing to include time spent traveling for same-day special assignments or traveling that required Plaintiff to be away from his home for which travel spanned more than one workday, which deprived him of wages in violation of the FLSA. [*Id.* at p. 5, ¶ 15]. Plaintiff sought compensation for these unpaid and/or improperly paid hours. [*Id.*]. Plaintiff also sought to assert collective action and/or class action claims on behalf of himself and similarly-situated employees who Plaintiff claims were treated in the same manner. [*See id.* at Count I, pp. 7-11; Count III, pp. 12-17]. Plaintiff also asserted certain non-FLSA claims, which are not the subject of this motion. [*See id.* at Count V at pp. 18-20].

Before engaging in protracted litigation, including formal discovery, in an effort to avoid further costs and burdens of litigation, the Parties conducted detailed informal discovery in order to exchange the information that they would need to engage in meaningful settlement negotiations. Specifically, Plaintiff identified numerous dates upon which he claimed he was not fully compensated when he traveled. Defendant provided to Plaintiff's counsel pertinent timesheets and payroll records. In turn, Defendant provided GPS travel data from the company vehicle Plaintiff operated for the dates Plaintiff specified. Upon request from Plaintiff, Defendant also provided additional GPS data to assess Plaintiff's out-of-county travel for a random month.

With the GPS data, the Parties were able to evaluate Plaintiff's claims about uncompensated travel time. All of these steps aided the Parties in pre-discovery settlement negotiations.

Negotiations continued, leading to a mediation. [*Notice of Mediation*, D.E. 23]. The mediation was held on January 30, 2020—albeit a resolution was not reached at that time. [*Plaintiff's Notice Regarding Mediation*, D.E. 27]. Still, back-and-forth settlement negotiations continued after the mediation, and the parties reached a compromise on Plaintiff's claims. Then, after resolving the wages and liquidated damages components of Plaintiff's claims, the parties compromised the attorney's fees claims. Once this was accomplished, the Parties notified this Honorable Court of the resolution. [*See Joint Notice of Settlement*, D.E. 28].

Therefore, the Parties seek approval of the Settlement Agreement, Waiver, and Release (the "Settlement Agreement") addressing the wage and hour claims. [*See* Exhibit "1"]. Pursuant to the proposed Settlement Agreement, Plaintiff agrees to release his wage and hour claims in exchange for the gross amount of One Thousand, Five Hundred and No/100 Dollars ($1,500.00), broken down as Two Hundred Fifty and No/100 Dollars ($250.00), minus applicable deductions as required by law, attributable as unpaid compensation; Two Hundred Fifty and No/100 Dollars ($250.00), as liquidated damages; and One Thousand and No/100 Dollars ($1,000.00) to Plaintiff's counsel's law firm, representing attorney's fees and costs that Plaintiff has incurred in relation to bringing this action. The attorney's fees were agreed to separately and without regard to the amount paid to settle Plaintiff's wage and hour claims. *See Bonetti v. Embarq Mgmt. Co.*, 2009 WL 2371407 (M.D. Fla. Aug. 4, 2009). It is affirmed that the amount to be paid by Defendant for Plaintiff's attorney's fees did not adversely affect the amounts paid by Defendant to Plaintiff. On the whole, the Parties do not dispute the reasonableness of the settlement or the reasonableness of the attorney's fees and costs.

Nevertheless, but for the proposed settlement, there are *bona fide* disputes as to whether Plaintiff failed to receive all compensation for the time spent traveling under the FLSA in each workweek, let alone the amounts Plaintiff claims as unpaid compensation and liquidated damages. Defendant would maintain a denial of any wrongdoing. Still, the Parties mutually evaluated the risk inherent in proceeding to trial and the costs of extended litigation. The Parties determined a compromise reached to end litigation was appropriate under the circumstances. To that end, Plaintiff and Plaintiff's counsel likewise believe the settlement reached in this matter is a good outcome for Plaintiff. Beyond resolving this matter, the Parties' proposed settlement benefits Plaintiff by avoiding any delay of their receipt of any purportedly unpaid wages.

<b><u>MEMORANDUM OF LAW IN SUPPORT OF THE AMENDED MOTION</u></b>

**1.    STANDARD OF REVIEW.**

Court approval is a method by which a private settlement of unpaid wages arising under the FLSA can become binding:

> There are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. . . . The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

*Lynn's Food Stores, Inc. v. United States Dep't of Labor*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). Before approving an FLSA settlement, the court must scrutinize it to determine if it is "a fair and reasonable resolution of a *bona fide* dispute." *Id.* at 1354-55. If the settlement reflects a reasonable compromise over issues that are actually in dispute, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id. at* 1354.

2.  **ALL RELEVANT FACTORS SUPPORT APPROVING THE PROPOSED SETTLEMENT AS FAIR AND REASONABLE.**

The following factors help determine whether a settlement should be considered fair and reasonable: (1) The existence of fraud or collusion behind the settlement; (2) The complexity, expense, and likely duration of the litigation; (3) The stage of the proceedings and the amount of discovery completed; (4) The probability of plaintiff's success on the merits; (5) The range of possible recovery; and (6) The opinions of the counsel. *See Hamilton v. Frito-Lay, Inc.*, No. 6:05-cv-592-Orl-22JGG, 2007 WL 328792, at **1-2, (M.D. Fla. Jan. 8, 2007)*. Considering these factors, the Parties submit that these factors support approving the Settlement Agreement.

A.  **There Is No Fraud in this Case.**

Courts have found no fraud or collusion where both parties were represented by counsel and the amount to be paid to the plaintiff seems fair. *See Helms v. Central Florida Regional Hospital*, No. 6:05-cv-383-Orl-22TGG, 2006 WL 3858491, at *4 (M.D. Fla. Dec. 26, 2006). Here, the parties are represented by counsel of their choice. Plaintiff is represented by Benjamin Yormak of Yormak Employment & Disability Law. B&I Contractors, Inc. is represented by Jennifer Fowler-Hermes and John Getty of Williams Parker Harrison Dietz & Getzen, PA. All Parties are represented by experienced labor and employment counsel with FLSA experience. As discussed below, the amount to be paid is fair and well within the range of reasonable possible recoveries. Accordingly, this factor favors approving the settlement as fair and reasonable.

B.  **The Complexity, Expense, and Length of this Litigation Supports an Early Resolution.**

The complexity, expense, and length of litigation heavily still weigh in favor of early resolution in this Lawsuit. The cost of protracted litigation, which would be required for the Parties to pursue their claims and defenses and obtain a final judgment on the merits, could be high. As noted above, the Parties would need to conduct discovery and dispositive motions—not

5

to mention trial—for amounts that would seem disproportionate to the cost of such litigation. The proposed settlement minimizes such costs, preserving the Parties' and the Court's time and resources. This factor also favors the Court approving the Settlement Agreement.

    **C.**    **The Parties Have Sufficiently Investigated this Case Prior to Engaging in Settlement Discussions.**

The Parties believe that there has been sufficient preliminary investigation and exchange of information to allow the Parties to undertake a fair and reasonable settlement. The Parties voluntarily exchanged, on an informal basis, legal analyses and evidence addressing Plaintiff's and Defendant's respective contentions about whether Plaintiff worked more or less than 40 hours each workweek. Plaintiff described his initial perceptions of the facts supporting his claims (including identifying specific dates that he asserted Defendant failed to fully compensate him for). Defendant voluntarily shared payroll records and GPS data from his vehicle for those dates along some random GPS data from which they could assess his travel time generally. The records and data assisted Plaintiff in understanding the respective Parties' position and defenses. All Parties took significant time to review, consider, and assess during the months-long negotiation process. The Parties agree that they exchanged all critical information necessary to assess Plaintiff's claims. Accordingly, this factor favors approval of the Settlement Agreement.

    **D.**    **Probability of Success on the Merits is in Dispute.**

There has been no change in the assessment of this factor by either of the Parties. Defendant still vigorously disputes the merits of Plaintiff's claims, and it intended to seek to have as much of the dispute resolved through motion practice as warranted after deposing Plaintiff. Plaintiff also maintains his belief that he would be able to assert sufficient evidentiary issues to withstand dispositive motion practice and succeed at trial. Accordingly, protracted litigation would be likely if the proposed settlement is not approved. Because the Parties each

continue to face risks of continued litigation, this factor likewise supports approval of the Settlement Agreement.

> **E. The Range of Possible Recovery for the Wage and Hour Claims Supports Approving Settlement.**

The possible results on the wage and hour claims varies. Depending on how the fact finder resolves the contested issues for these claims based on the days Plaintiff identified, a final judgment could range as follows: (i) $0.00 on a total defense verdict; and (ii) $333.18 in unpaid wages and overtime and $333.18 in liquidated damages for a total plaintiff verdict. The proposed settlement serves as a compromise for the Parties. Because the Settlement Agreement represents a reasonable compromise given the facts and risks the Parties faced, this factor once more supports approval.

> **F. Counsel for the Parties Agree the Proposed Settlement Represents a Fair Resolution of the Wage and Hour Claims.**

Given the facts, law, and circumstances of this case, counsel for Plaintiff continues to agree that the proposed settlement is a fair and reasonable compromise of Plaintiff's claims. Counsel for Defendant concurs that the proposed settlement is a reasonable means of avoiding continued litigation and defense costs. This factor also supports approval.

**3. THERE IS NO CONFIDENTIALITY PROVISION IN THE PROPOSED SETTLEMENT OF THE WAGE AND HOUR CLAIMS.**

This Court has previously held that settlement agreements containing confidentiality provisions contravene the public policy of the FLSA. *Dees v Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1237 (M.D. Fla. 2010). Consequently, the Parties have proposed a Settlement Agreement in this wage and hour case that does not include a confidentiality provision. As such, this issue does not prohibit settlement approval.

**4.  THERE IS NO GENERAL RELEASE IN THE PROPOSED SETTLEMENT OF THE WAGE AND HOUR CLAIMS.**

This Court has previously held that, absent additional consideration, settlement agreements involving FLSA claims should not include a general release of any possible claim against the defendants. *Dees*, 706 F. Supp. 2d at 1237 (M.D. Fla. 2010). To that end, the Parties have proposed a settlement agreement in this FLSA case that is limited to the wage and hour claims that were brought in the litigation. Resolution of the non-FLSA claims were handled separately. Therefore, this potential issue does not preclude approval.

## CONCLUSION

In conclusion, the relevant factors favor early settlement remain present in this matter, and the Parties respectfully submit that this Court should approve the Settlement Agreement, Waiver, and Release dismiss this case *with prejudice*.

Respectfully submitted this 23rd day of April 2020.

| | |
|---|---|
| */s/ Benjamin H. Yormak* | */s/ John C. Getty* |
| Benjamin H. Yormak | Jennifer Fowler-Hermes |
| Florida Bar No. 71272 | Florida Bar No. 0127442 |
| Trial Counsel for Plaintiff | jfowler-hermes@williamsparker.com |
| YORMAK EMPLOYMENT & DISABILITY LAW | John C. Getty |
| | Florida Bar No. 1013911 |
| 9990 Coconut Road | jgetty@williamsparker.com |
| Bonita Springs, Florida 34135 | WILLIAMS PARKER HARRISON |
| T: (239) 985-9691 | DIETZ & GETZEN |
| F: (239-288-2534 | 200 South Orange Avenue |
| | Sarasota, Florida 34236 |
| | T: 941-366-4800 |
| | F: 941-954-3172 |
| *Counsel for Plaintiff,* | |
| *Jamie Allen* | *Counsel for Defendant,* |
| | *B&I Contractors, Inc.* |

5540867.v1